O

1

2

3

4

5

6

7

8                                UNITED STATES DISTRICT COURT

9                               CENTRAL DISTRICT OF CALIFORNIA

10

11   MARK LEIDENHEIMER, an          )   Case No. CV 13-09568 DDP (VBKx)
     individual,                    )
12                                  )   **ORDER DENYING PLAINTIFF'S MOTION
                        Plaintiff,  )   FOR (1) ENTRY OF JUDGMENT ON THE
13                                  )   VERDICT IN FAVOR OF PLAINTIFF;
           v.                       )   OR, ALTERNATIVELY, (2) A PARTIAL
14                                  )   NEW TRIAL**
     O'REILLY AUTOMOTIVE STORES,    )
15   INC., a Missouri               )   [Dkt. No. 140]
     corporation; and CSK AUTO,     )
16   INC., an Arizona               )
     corporation;                   )
17                                  )
                        Defendants. )
18   _____

19

20         Presently before the Court is Plaintiff's Motion for (1) Entry

21   of Judgment on the Verdict in Favor of Plaintiff; or, Alternatively

22   (2) A Partial New Trial.  (Dkt. No. 140.)  After considering the

23   parties' submissions and hearing oral argument, the Court adopts

24   the following Order.

     **I.    BACKGROUND**
25
           The facts of this case are well-known to the parties and the
26
     Court.  The jury trial in this case began on February 16, 2016.
27
     (Dkt. No. 122.)  On February 22, 2016, the day before trial ended,
28
     the Court held a status conference on jury instructions.  (Dkt. No.

1   128.)  Closing arguments were made on the fifth day of trial,

2   February 23, 2016.  (Dkt. No. 129.)  Before closing, Defense

3   counsel made a motion for judgment as a matter of law on certain

4   issues.  (See id.; Dkt. No. 130.)[1]  On the sixth day of trial,

5   February 24, 2016, the jury deliberated almost the entire day

6   before returning a verdict.  (Dkt. No. 130 (Minutes); Dkt. No. 139

7   (Unredacted Special Verdict).)

8        On March 10, 2016, Plaintiff filed this Motion.  (Dkt. No.

9   140.)  The next day, Plaintiff filed an objection to Defendant's

10  Proposed Judgment in Defendant's favor.  (Dkt. No. 141.)  The Clerk

11  of Court entered Judgment that same day, ordering: "The plaintiff

12  recover nothing, the action be dismissed on the merits, and each

13  party bear its own costs."  (Dkt. No. 142.)

14  **II.   LEGAL STANDARD**

15       Plaintiff's Motion for Entry of Judgment on the Verdict in its

16  Favor is not a typical post-trial motion.  It is similar to a

17  motion under Federal Rule of Civil Procedure ("FRCP") 50 for

18  judgment as a matter of law because Plaintiff claims that judgment

19  in its favor under a California Family Rights Act ("CFRA")

20  interference cause of action is proper as a matter of law based on

21  the verdict the jury returned.  (See generally Mot.)  The Rule 50

22  motion for judgment as a matter of law is based on a court finding

23  that a reasonable jury would not have a legally sufficient

24

---

25       [1]    The Court notes that the clerk's minutes of trial show
    that a "motion to dismiss" was denied on February 24, 2016, the
26  sixth day of trial when only jury deliberation occurred.  This
    appears to be a mistake.  The reporter's transcript, the
27  declaration of defense counsel, and Plaintiff's counsel's
    supplemental declaration show that Defendant made an oral motion
28  for judgment on certain issues on February 23, 2016, before closing
    arguments.  The Court denied this motion.

2

1  evidentiary basis to find for a party on an issue.  Fed. R. Civ. P.

2  50(a).  A Rule 50(b) motion after trial is a renewal motion; that

3  is, the party must make a pre-verdict Rule 50(a) motion to be

4  eligible to make a motion under Rule 50(b).

5       A motion for a new trial or altering a judgment is governed by

6  FRCP 59.  A new jury trial can be granted "for any reason for which

7  a new trial has heretofore been granted in an action at law in

8  federal court."  Fed. R. Civ. P. 59(a)(1)(A).  "Courts have ordered

9  new trials where the jury reached a verdict 'contrary to the clear

10 weight of the evidence' and which is therefore a 'miscarriage of

11 justice.'"  Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc., Nos.

12 CV 92-4698 JGD, CV 92-3891 JGD, 1995 WL 491434, at *4 (C.D. Cal.

13 Mar. 7, 1995) (quoting Murphy v. City of Long Beach, 914 F.2d 183,

14 187 (9th Cir. 1990)).

15 **III. DISCUSSION**

16      **A.   Motion for Verdict in Favor of Plaintiff**

17      Plaintiff argues that the Court should find that the jury's

18 verdict supports a cause of action for CFRA interference.  (Mot. at

19 3, 5-11.)  Plaintiff claims that the jury found all the facts

20 necessary for a CFRA interference claim.  (Id. at 4-5, 8.)  That

21 is, the jury found that Leidenheimer did not voluntarily resign

22 from his employment with O'Reilly, that he was eligible for a

23 medical leave of absence, and that he provided reasonable notice of

24 his need for a medical leave to O'Reilly.  (Id. at 4-5 (citing

25 Decl. Pico, Ex. A (Special Verdict).)  All that is needed,

26 Plaintiff argues, is for an employee to be entitled to leave and

27 for the employer to interfere with or deny that right to leave.

28 (Id. at 5 (citing Faust v. Cal. Portland Cement Co., 150 Cal. App.

1   4th 864, 879 (2007)).)  Thus, Plaintiff claims the jury's finding

2   supports its cause of action for CFRA interference because

3   Plaintiff was entitled to leave and Defendant involuntarily

4   discharged Plaintiff instead of granting him leave.

5        Plaintiff further claims that the reason why the CFRA

6   interference cause of action did not go to the jury is that the

7   Court ordered Plaintiff to remove the cause of action.  (Reply at

8   3-5; Supp. Decl. Pico ISO Pl. Mot. at 2-4.)[2]

9        Based on the Court's review of the record, the Court never

10  ordered Plaintiff to remove the CFRA interference cause of action.

11  The court reporter's transcript that Plaintiff attached to the Pico

12  Declaration is dispositive on this point.  (Supp. Decl. Pico, Ex.

13  A.)  At the close of evidence, the Court held a status conference

14  outside the presence of the jury.  (Id. at 2 (using the ECF

15  pagination).)  The Court first discussed the matter of managing

16  agents for punitive damages purposes with the parties.  (Id. at 2-

17  15.)  Then, counsel clarified that Plaintiff had withdrawn two of

18  his theories: the reasonable accommodation cause of action and the

19  failure to engage in the interactive process cause of action.  (Id.

20  at 15.)  Defense counsel then made a motion for judgment as a

21  matter of law that insufficient evidence was before the jury to

22  support the CFRA interference cause of action.  (Id. at 16-18.)

23  Defense counsel also made a motion for judgment on both the section

24  1102.5 cause of action and the managing agent issue based on a lack

25  of evidence.  (Id. at 18-19.)

26  ────────────────────────

27      [2]     Plaintiff did not raise this claim in its Motion, but
    only in response to Defendant's argument that it voluntarily
    withdrew the cause of action and thus waived any current argument
28  under FRCP 49(a)(3).  (See generally Mot.; Opp'n at 8-9.)

4

1    The Court then took up the interference cause of action

2  argument.  The Court was initially "inclined to agree" with defense

3  counsel, but Plaintiff's counsel made arguments defending the cause

4  of action.  (Id. at 19-20.)  Plaintiff argued it was "a viable

5  theory" that should go to the jury.  (Id. at 20.)

6    The Court ultimately agreed with Plaintiff's counsel and

7  allowed the cause of action to go forward, but using the defense's

8  jury instruction:

9      **THE COURT:** Well, let's take up the interference issue. You
       know, I'm inclined to agree. I don't -- I don't really --
10     I don't see that as a viable theory. I see the retribution
       retaliation theory is a viable theory; but the interference
11     theory, I don't see it.

12     **[Plaintiff's Counsel] MR. MARKSON:** Your Honor, I think that
       it is -- I think it is a viable theory. I think it is
13     something for a jury to determine --

14     **THE COURT:** What are you going to say to the jury? What's
       the argument?

15

16     **MR. MARKSON:** Well I think that Mr. Corona should -- he was
       given the job of advising Mr. – Mr. Leidenheimer about his
17     rights -- about his right to a leave of absence under the
       family medical leave -- leave of absence policy; not
       necessarily under FEMLA but under their own policy. And the
18     information that he should have provided, he should have
       disclosed to him that he would have --

19
       **THE COURT:** But -- but I don't know that O'Reilly's right
20     requirement was triggered to provide the yes, no, or maybe.

21     **MR. MARKSON:** Well, I think that it -- I think that that's
       something that -- for a jury to determine then. I mean,
22     certainly, you've got a man who is in the hospital who has
       the evidence -- some of the evidence has shown that he has
23     disclosed to not only his store but also to others in the
       store that he was in the hospital. Being in the hospital
24     alone, is a serious health condition under O'Reilly's own
       policies which would trigger the family medical leave of
25     absence. And that's something that he would have been
       entitled to. I think that Mr. Corona discouraged Mr. -- I'm
26     sorry -- Mr. Leidenheimer at best discouraged -- there's
       testimony that he didn't –

27
       **THE COURT:** Why did he do that?
28

5

1     **MR. MARKSON:** Because he wanted to get rid of Mr.
2     Leidenheimer.

    **THE COURT:** So isn't that the retaliation case?
3

4     **MR. MARKSON:** I think there is some overlap. I think that
    it's -- it's interference. And I think that it's restraint
    of -- of -- of -- to keep Mr. Leidenheimer --
5

6     **THE COURT:** *Well, I'm inclined to use the Defense*
    *jury instruction on this topic.* And -- and --

7     **[Defendant's Counsel] MR. PETERSON:** And I think the
    problem, Your Honor, that you justified is that Defense
8     instruction says that reasonable notice is required, and
    there's no evidence that Mr. Leidenheimer ever told
9     O'Reilly the expected duration of his leave. And that -- on
    that basis alone, this claim cannot go to the jury --
10

    **THE COURT:** I mean, that's true. That's true.
11

12     **MR. PETERSON:** -- and it cannot go to the jury because that
    element is lacking.

13     **MR. MARKSON:** I believe that Mr. Leidenheimer had testified
    that he believed he'd be in the hospital for a couple of
14     weeks and that was the best that he could give. I believe
    that that is -- that was the testimony from the stand.
15

    **THE COURT:** You know, I don't recall one way or the other.
16

    **MR. MARKSON:** That is my memory, Your Honor.
17

    **THE COURT:** You know, my memory --
18

    **MR. MARKSON:** Two weeks.
19

    **THE COURT:** *That's fine. I'm going to use the*
20     *Defense instruction on that particular topic, and you can*
    *argue it.* The 1102.5 issue, do you want to say anything on
21     that?

22     **MR. MARKSON:** Yes, Your Honor. I think that there is a -- a
    real issue about whether they retaliated as a result of Mr.
23     Leidenheimer bringing up these issues of irregularities and
    improprieties with the -- the with meal break penalties.
24     Yes, I mean, I don't know --

25     **THE COURT:** Even though he signed this release?

26     **MR. MARKSON:** He signed the release, but it wasn't
    as if the issue had been resolved. I mean, the --
27

    **THE COURT:** Are you going to argue that to a jury? Under
28     penalty of perjury, this is -- you know, this resolves

1  everything. You're going to argue that it wasn't resolved?

2  **MR. MARKSON:** He still had a class-action lawsuit pending
   against the company based on these very allegations. It's
3  -- it -- to me, it's really troubling that he's being asked
   to sign this document without the participation of his
4  lawyer -- without the participation of the Court. And, you
   know, it seems that it was very opportunistic of O'Reilly
5  to take advantage of Mr. Leidenheimer like that in spite of
   --
6
   **THE COURT:** Well, you know, I'm going to leave that claim
7  in. That's fine. I'm going to deal with the jury
   instructions as we discussed. I'm going use the model
8  instruction that defines managing agent. And I don't think
   there are any other outstanding jury instruction issues,
9  therefore. Are there?

10  **[Defendant's Counsel] MR. BONISKE:** Well, we had proposed a
    couple new ones, which I actually sent to him; but I had
11  not electronically filed.

12  **THE COURT:** After our meeting yesterday?

13  **MR. BONISKE:** After the meeting yesterday.

14  **THE COURT:** So here's what I think you should do . . . I
    think you should go get a snack for 20 minutes. You guys
15  should meet and confer and see if you can put the jury
    instructions together in final form. Okay? Thank you.
16
    **MR. PETERSON:** And is it --
17
    **THE COURT:** We're going to look at the verdict. You're going
18  to need to look at the verdict form and simplify it, as
    well.
19
    **MR. PETERSON:** We can go off the record.
20
    **THE REPORTER:** No, the Court has to direct me; not
21  you.

22  **THE COURT:** Yes. I delegate those instructions.

23  (End of transcript production.)

24  (Id. at 19-24.)

25  This transcript demonstrates that the Court never ordered

26 Plaintiff to remove the interference cause of action from its case,

27 the jury instructions, or the verdict form.  Rather, the Court held

28 that the defense's instruction on interference would be used.  The

1   defense's instruction was the model jury instruction from the

2   Judicial Council of California Civil Jury Instructions ("CACI").

3   Plaintiff's counsel was told that he could argue the interference

4   theory.  But Plaintiff did not include the theory in the jury

5   instructions or verdict form after this point.  Thus, it is

6   incorrect for Plaintiff to state that the Court ordered him to

7   remove the interference cause of action.[3]  This also means that

8   Plaintiff — for whatever reason — appears to have removed or

9   withdrawn the cause of action; therefore, the Court cannot consider

10  it after the fact.

11       Further, there is no basis for the Court to find that the

12  verdict supports Plaintiff at all: the jury's findings do not

13  support a CFRA interference cause of action, even assuming the

14  Court could examine the issue.  According to the model jury

15  instruction, the elements of a CFRA interference cause of action

16  are:

>  [Name of plaintiff] claims that [name of defendant]
>  [refused to grant [him/her] [family care/medical] leave]
>  [refused to return [him/her] to the same or a comparable
>  job when [his/her] [family care/medical] leave ended]
>  [other violation of CFRA rights]. To establish this claim,
>  [name of plaintiff] must prove all of the following:
>
>  1. That [name of plaintiff] was eligible for [family
>  care/medical] leave;
>
>  2. That [name of plaintiff] [requested/took] leave [insert
>  one of the following:]

---

[3]      The Court notes that — contrary to Plaintiff's assertions
in its Motion and Reply brief — the Court did not "direct" the jury
to strike the damages awarded.  The Court found an inconsistency in
the verdict because the verdict's instructions only directed the
jury to award damages if it marked "yes" to certain questions that
the jury did not mark "yes" to; thus, there was no basis for an
award of damages.

        [for the birth of [name of plaintiff]'s child or bonding
        with the child;]

        [for the placement of a child with [name of plaintiff] for
        adoption or foster care;]

        [to care for [name of plaintiff]'s [child/parent/spouse]
        who had a serious health condition;]

        [for [name of plaintiff]'s own serious health condition
        that made [him/her] unable to perform the functions of
        [his/her] job with [name of defendant];]

        3. That [name of plaintiff] provided reasonable notice to
        [name of defendant] of [his/her] need for [family
        care/medical] leave, including its expected timing and
        length. [If [name of defendant] notified [his/her/its]
        employees that 30 days' advance notice was required before
        the leave was to begin, then [name of plaintiff] must show
        that [he/she] gave that notice or, if 30 days' notice was
        not reasonably possible under the circumstances, that
        [he/she] gave notice as soon as possible];

        4. That [name of defendant] [refused to grant [name of
        plaintiff]'s request for [family care/medical]
        leave/refused to return [name of plaintiff] to the same or
        a comparable job when [his/her] [family care/medical] leave
        ended/other violation of CFRA rights];

        5. That [name of plaintiff] was harmed; and

        6. That [name of defendant]'s [decision/conduct] was a
        substantial factor in causing [name of plaintiff]'s harm.

CACI 2600 (Violation of CFRA Rights — Essential Factual Elements).

        Here, the jury did not make the necessary factual findings to

support a CFRA interference cause of action based on the face of

the jury verdict or reasonable inferences drawn from it.  The jury

found that Plaintiff had not voluntarily resigned from his

employment at O'Reilly, that Plaintiff was eligible for a medical

leave of absence, and that Plaintiff had provided reasonable notice

to O'Reilly of his need for medical leave.  (Dkt. No. 139,

Unredacted Special Verdict.)  However, the jury found that

Plaintiff's request for a medical leave of absence was not a

1   substantial motivating reason for Defendant's decision to discharge

2   him — essentially, the jury found no causal nexus between the

3   medical leave issue and the involuntary discharge of employment.

4   (Id.)  This means that the jury did not reach the questions of

5   whether Plaintiff suffered harm as a result of the Defendant's

6   actions, which is a required element of the CFRA retaliation and

7   interference causes of action.  (Id.)  Thus, the jury did not find

8   several essential elements of a CFRA interference cause of action,

9   including that (1) Defendant violated Plaintiff's CFRA rights by

10  denying Plaintiff's request or refusing to return Plaintiff to his

11  job or some other violation; (2) Plaintiff was harmed by that

12  action; and (3) Defendant was a substantial factor in causing that

13  harm.  Because the jury did not make those factual findings, the

14  Court cannot find that the verdict supports an award to Plaintiff

15  on that cause of action, even if the cause of action was not waived

16  or withdrawn by Plaintiff.

17      **B.    Motion for New Trial**

18      The Court has very limited bases to award a new trial.

19  Further, Plaintiff appears to seek a new trial purely for damages

20  assuming that it has shown that it succeeded on its CFRA

21  interference cause of action.  (Mot. at 4, 11-12; Reply at 10-11.)

22      As discussed above, the jury's verdict does not support a CFRA

23  interference cause of action and thus a new trial on the basis of

24  damages for that cause of action is not supported by any evidence

25  in the record.  Further, there is no argument or evidence to show

26  that the trial resulted in a miscarriage of justice or a verdict

27  contrary to the weight of evidence.  Therefore, the Court denies

28  the motion for a new trial.

**IV.   CONCLUSION**

   For all the reasons discussed above, the Court DENIES

Plaintiff's Motion for Judgment on the Verdict in its Favor and

DENIES Plaintiff's Motion for New Trial.


IT IS SO ORDERED.


Dated: April 12, 2016

                                  DEAN D. PREGERSON

                                  United States District Judge